155 T.C. No. 9

UNITED STATES TAX COURT

JESUS R. OROPEZA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15309-15.                    Filed October 13, 2020.

R opened an examination of P's 2011 tax year. On January 14, 2015, facing an expiring period of limitations, the revenue agent (RA) sent P a Letter 5153 and accompanying report (RAR). The RAR asserted a 20% accuracy-related penalty "attributable to one or more of" negligence, a substantial understatement of income tax, a substantial valuation misstatement, and a "transaction lacking economic substance." See I.R.C. sec. 6662(a), (b)(1), (2), (3), (6). The Letter 5153 explained that P could agree to the RAR adjustments, consent to extend the limitations period and have his case reviewed by the IRS Appeals Office, or receive a notice of deficiency.

P declined the first two options, and the RA closed the case. On January 29, 2015, the RA's immediate supervisor signed a Civil Penalty Approval Form authorizing the assertion of a 20% penalty for a substantial understatement of income tax.

On May 1, 2015, the RA recommended assertion of an I.R.C. sec. 6662(b)(6) penalty, calculated at a 40% rate under I.R.C. sec.

6662(i), for a "transaction lacking economic substance" not disclosed on P's return. The RA's supervisor signed the memo making that recommendation. On May 6, 2015, R issued a notice of deficiency determining a 40% penalty under I.R.C. sec. 6662(b)(6) for a nondisclosed noneconomic substance transaction and (in the alternative) a 20% penalty for a substantial understatement or negligence.

I.R.C. sec. 6751(b)(1) requires supervisory approval of penalties. Conceding that the negligence penalty was not timely approved, R filed a motion for partial summary judgment urging that he secured timely approval for a 20% substantial understatement penalty and a 40% penalty under I.R.C. sec. 6662(b)(6). P filed a cross-motion urging that no penalties had been timely approved.

1. Held: R's issuance to P of a Letter 5153 and an RAR formally communicated to P the Examination Division's definite determination to assert a 20% penalty on four alternative grounds, including a substantial understatement of income tax under I.R.C. sec. 6662(b)(2) and a transaction lacking economic substance under I.R.C. sec. 6662(b)(6).

2. Held, further, R did not satisfy the requirements of I.R.C. sec. 6751(b)(1) for those penalties because written supervisory approval was not given for any of them until after the Letter 5153 and the RAR had been issued to P.

3. Held, further, I.R.C. sec. 6662(i) does not impose a distinct penalty but simply increases the rate of the penalty imposed by I.R.C. sec. 6662(a) and (b)(6). Because that penalty was not timely approved, there is no applicable penalty for which the rate could be increased under I.R.C. sec. 6662(i). R therefore did not secure timely approval for a 40% penalty under I.R.C. sec. 6662(b)(6) .

Tim A. Tarter, Kacie N.C. Dillon, and Jonathan A. Halmi, for petitioner.

Doreen M. Susi, John R. Gordon, Michael R. Harrel, and John W. Stevens, for respondent.

OPINION

LAUBER, Judge: This case is before the Court on cross-motions for partial summary judgment on the question whether timely written supervisory approval was secured, as section 6751(b)(1) requires, for three penalties determined for petitioner's 2011 tax year.[1] We conclude that timely approval was not obtained for any of the penalties. We will accordingly grant petitioner's motion and deny the cross-motion filed by the Internal Revenue Service (IRS or respondent).

Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. Petitioner resided in Arizona when he timely petitioned this Court.

---

[1]This case is related to Oropeza v. Commissioner, T.C. Memo. 2020-111, in which we addressed supervisory approval of penalties determined for petitioner's 2012 tax year. Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

Petitioner was the sole shareholder of FIRM, Inc. (FIRM), a "micro-captive" insurance company organized as an S corporation for Federal income tax purposes. See Notice 2016-66, 2016-47 I.R.B. 745. In March 2014 an IRS revenue agent (RA) in Phoenix, Arizona, opened an examination of petitioner's 2011 tax year, which was later expanded to subsequent years. The period of limitations for 2011 was set to expire on April 15, 2015, and petitioner's representative informed the RA that petitioner would not agree to extend the limitations period.

On January 14, 2015, the RA sent petitioner a Letter 5153 and attached Form 4549-A, Income Tax Discrepancy Adjustments, commonly known as a revenue agent report (RAR). The RAR proposed to increase by $1,250,000 petitioner's distributive share of FIRM's income, to increase by $650,000 petitioner's reported capital gain, and to make corresponding adjustments to his alternative minimum tax. In a schedule captioned "Accuracy-Related Penalties," the RAR asserted a 20% penalty under section 6662(a), stating as follows:

> It has been determined that the underpayment of tax shown * * * below is attributable to one or more of the following:
> (1) Negligence or disregard of rules or regulations;
> (2) Substantial understatement of income tax;
> (3) Substantial valuation misstatement (overstatement);
> (4) Transaction lacking economic substance.

See sec. 6662(b)(1), (2), (3), (6).  The RAR does not explicitly state, in the text above or elsewhere, whether the IRS was asserting one or more of these bases in particular or was asserting all four as alternative bases for the 20% penalty.

The schedule had a space in which the RA could have asserted a penalty, at a rate of 40%, attributable to one or more of the following:  (1) gross valuation misstatement, (2) nondisclosed transaction lacking economic substance, or (3) undisclosed foreign financial assets.  See sec. 6662(h), (i), and (j).  However, the underpayment to which any 40% penalty would be applied was listed as zero, and the amount of the 40% penalty was listed as zero.  There is no indication any-where in the RAR that a 40% penalty was being asserted as an alternative to the 20% penalty.

The Letter 5153 gave petitioner three options:  (1) agree to the adjustments in the RAR; (2) execute a Form 872, Consent to Extend the Time to Assess Tax, if he wished to have the IRS Office of Appeals (Appeals) review the case; or (3) de-cline the first two options.  If petitioner declined the first two options, the Letter 5153 advised that the IRS would issue him a notice of deficiency enabling him to petition this Court for redetermination of the deficiency and the penalty.

On January 14, 2015--the same day on which he mailed the Letter 5153--the RA completed work on a Civil Penalty Approval Form.  In the box captioned

"Reasons for Assertion of Penalty(s)," the following text appears in typed form: "Original tax due on return was $54,999. Tax per examination is $578,377. A substantial understatement penalty should apply." Immediately following that text the following words appear in handwritten form: "and has been proposed." The record does not disclose who added those words. On page 2 the RA checked "yes" for the substantial understatement penalty. He checked "no" for "negligence," "section 6662(b) other accuracy related [penalty]," and "alternative penalty position."

Petitioner did not agree to the adjustments in the RAR and did not agree to extend the period of limitations by executing Form 872. On January 28, 2015, the RA accordingly closed the case. The following day his then-immediate supervisor, Group Manager Mead, signed the Civil Penalty Approval Form authorizing the assertion of a 20% penalty for a substantial understatement of income tax.

On May 1, 2015, the RA prepared a memo for IRS Chief Counsel Attorney Brandon Keim. The memo notes that "[s]ection 6662(i) increases the accuracy-related penalty from 20% to 40% for any portion of an underpayment that is attributable to a 'nondisclosed noneconomic substance transaction' if the relevant facts * * * are not adequately disclosed in the return." The memo recites that petitioner disclosed no facts about the captive insurance arrangement on FIRM's return or on

his individual return. The memo accordingly recommends that "a 40% penalty is appropriate for any portion of the underpayment attributable to the abusive captive insurance company transactions."

This memo does not refer specifically to petitioner's 2011 tax year, but it was in petitioner's 2011 administrative file. The RA signed the memo and dated his signature May 1, 2015. The RA's then-immediate supervisor, Acting Group Manager Pringle, also signed the memo, but his signature was not dated. The RA and Mr. Pringle both averred in sworn declarations that, to the best of their recollections, Mr. Pringle signed the memo on May 1, 2015.

On May 6, 2015, the IRS issued to petitioner the notice of deficiency at issue in this case. The income adjustments determined in the notice were substantially similar to those asserted in the RAR.[2] The notice determined a "40% section 6662(b)(6) penalty," stating as follows:

> It is determined that all of the underpayment of tax is a disallowance of claimed tax benefits by reason of a transaction lacking economic substance * * * . It also is determined that all of the underpayment of tax is attributable to one or more nondisclosed noneconomic substance transactions. Consequently, there is added to the tax an amount equal to 40% of such underpayment.

---

[2]The only difference was that the notice set forth the $650,000 adjustment for unreported capital gain as an alternative to its primary position that petitioner received a $617,500 constructive dividend from the entity that held the property.

As alternatives, the notice determined a 20% penalty based on negligence or a substantial understatement of income tax.

Petitioner timely petitioned for redetermination. On November 19, 2019, respondent filed a motion for partial summary judgment contending that the RA had obtained timely supervisory approval for the 40% penalty and for the alternative 20% penalty for a substantial understatement. Respondent concedes that the RA did not secure timely approval for a negligence penalty. On December 23, 2019, petitioner filed a cross-motion for partial summary judgment contending that timely supervisory approval had not been obtained for any of the penalties.

## Discussion

### I.  Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp.,

98 T.C. at 520. However, the nonmoving party "may not rest upon the mere allegations or denials" of his pleadings but instead "must set forth specific facts showing there is a genuine dispute" for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520. The parties have filed cross-motions on the question whether timely supervisory approval was obtained for any of the penalties asserted in the notice of deficiency. We find that this issue may be adjudicated summarily.

II.    Analysis

Section 7491(c) generally provides that "the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty." This burden requires the Commissioner to come forward with sufficient evidence indicating that imposition of the penalty is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The Commissioner's burden of production under section 7491(c) includes establishing compliance with section 6751(b)(1). See Chai v. Commissioner, 851 F.3d 190, 217, 221-222 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determina-

tion." We must decide whether the RA obtained timely supervisory approval, as required by this section, for the penalties determined in the notice of deficiency.

A.    20% Penalty

Respondent contends that the "initial determination" of the substantial understatement penalty was made in the notice of deficiency mailed to petitioner on May 6, 2015. The Civil Penalty Approval Form approving assertion of this penalty was signed by Group Manager Mead on January 29, 2015. Because the penalty was approved by the RA's then-immediate supervisor before the notice of deficiency was mailed, respondent urges that the approval was timely.

In Belair Woods, LLC v. Commissioner, 154 T.C. 1, 14-15 (2020), we found that the "initial determination" of the penalty assessment was embodied in a letter "by which the IRS formally notified * * * [the taxpayer] that the Examination Division had completed its work and * * * had made a definite decision to assert penalties." Depending on how a particular examination is conducted, the taxpayer may receive this notification in a notice of deficiency, or he may receive the notification in a document that the IRS sent him at an earlier date. Petitioner contends that the "initial determination" of the substantial understatement penalty was embodied in the Letter 5153 and accompanying RAR that the IRS sent him on January 14, 2015. On the facts presented, we agree.

The RAR informed petitioner that the IRS had determined a 20% penalty "attributable to one or more" of four specified grounds, including a "substantial understatement of income tax." The Letter 5153 accompanying the RAR gave petitioner three options: accept the adjustments set forth in the RAR, sign a Form 872 and go to Appeals, or receive a notice of deficiency. This letter made clear that the Examination Division had concluded its work and "had made a definite decision to assert penalties." Ibid. Whichever option petitioner selected, the Examination Division's typical responsibilities from that point forward would be ministerial in nature.

Respondent seeks to distinguish this case from Belair Woods, noting that the taxpayer there received a 60-day letter enabling it to go to Appeals, whereas petitioner did not receive a 30-day letter enabling him to do so. We find this to be a distinction without a difference. A 30- or 60-day letter is one way of communicating to a taxpayer that the Examination Division has concluded its work. But it is not the only way. The Letter 5153 clearly communicated the same message to petitioner: It told him that he could now go to Appeals, but only if he first executed a Form 872 that would give Appeals enough time to consider his case.

We accordingly conclude that the "initial determination" of the substantial understatement penalty was embodied in the Letter 5153 and accompanying RAR

mailed to petitioner on January 14, 2015. Because supervisory approval for that penalty was not secured until January 29, 2015, the approval was untimely. We have reached a similar conclusion in previous cases where the taxpayer refused to extend the limitations period and thus could not receive a 30- or 60-day letter. See Oropeza v. Commissioner, T.C. Memo. 2020-111, at *8 (concluding that a Letter 5153 and attached RAR embodied the "initial determination" of the penalties included in the RAR); Carter v. Commissioner, T.C. Memo. 2020-21, at *29-*30 (same).

### B.    40% Penalty

The parties agree that the notice of deficiency constituted the first notification to petitioner that he might be liable for a penalty calculated at a 40% rate. Respondent contends that this penalty, imposed for engaging in a "transaction lacking economic substance" not disclosed on the return, received supervisory approval when Acting Group Manager Pringle signed the RA's memo to Attorney Keim on May 1, 2015. Because the notice of deficiency was not mailed until May 6, respondent contends that timely approval for a "40% section 6662(b) penalty" was secured. Petitioner urges that the proper analysis requires a closer inspection of the statutory text and the RAR, and we agree.

Section 6662(a), captioned "Imposition of Penalty," provides that, "[i]f this section applies to any portion of an underpayment * * * , there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies." Section 6662(b) provides that the penalty applies to the portion of any underpayment attributable to one or more of eight specified grounds. The sixth specified ground is "[a]ny disallowance of claimed tax benefits by reason of a transaction lacking economic substance." Sec. 6662(b)(6).

Section 6662(i) is captioned "Increase in Penalty in Case of Nondisclosed Noneconomic Substance Transactions." It provides: "In the case of any portion of an underpayment which is attributable to one or more nondisclosed noneconomic substance transactions, subsection (a) shall be applied with respect to such portion by substituting '40 percent' for '20 percent'." Sec. 6662(i)(1). Litigants sometimes refer to section 6662(i)--like section 6662(h), applicable in the case of a "gross valuation misstatement"--as imposing a "40% penalty." As the statute's text makes clear, however, section 6662(i) does not impose a distinct penalty. It simply increases the rate of the penalty imposed by section 6662(a) and (b)(6) for engaging in a transaction lacking economic substance.

Given the statutory structure, we think the proper analysis requires that we answer two questions. The first is whether the RAR should be read as asserting a

penalty under section 6662(a) and (b)(6) for engaging in a transaction lacking economic substance. If so, that penalty did not receive timely approval. The second question is whether, if the base-level penalty was not timely approved, the IRS can satisfy section 6751(b)(1) by later determining that section 6662(i) applies because the transaction was not disclosed on the return.

### 1. Penalties Asserted in the Letter 5153 and RAR

The RAR accompanying the Letter 5153 asserted a 20% penalty "attributable to one or more of the following: (1) Negligence or disregard of rules or regulations; (2) Substantial understatement of income tax; (3) Substantial valuation misstatement (overstatement); (4) Transaction lacking economic substance." This appears to be form text that appears frequently in RARs and notices of deficiency. See, e.g., McGuire v. Commissioner, 149 T.C. 254, 262-263 (2017) (referring to this text as making "a boilerplate determination of an accuracy-related penalty"). We think that a taxpayer reading these words would assume that the IRS had reserved the right to establish penalty liability on any of these grounds. He would assume, in other words, that the RAR was asserting all four bases as alternative grounds for imposing a penalty.

This conclusion is consistent with our precedents, to the extent they have discussed this question. In Ocampo v. Commissioner, T.C. Memo. 2015-150, 110

T.C.M. (CCH) 146, 160, the notice of deficiency included boilerplate text similar to that here, determining a 20% penalty "attributable to one or more of" negligence, a substantial understatement of income tax, and a substantial valuation overstatement. "These represent alternative grounds for imposition of the penalty," we concluded, "as the accuracy-related penalties do not stack." Id. at 160 n.22 (citing section 1.6662-2(c), Income Tax Regs.). We proceeded to evaluate the taxpayer's possible liability on each of the three distinct grounds. See id. at 160-161 & n.22.

In Estate of Ronning v. Commissioner, T.C. Memo. 2019-38, 117 T.C.M. (CCH) 1206, the notice of deficiency included the same boilerplate text as in Ocampo. But the following page of the notice "clarified that the underpayment was determined to be due to a substantial understatement of income tax." Id. at 1210, 1217. "Because the notice of deficiency determined that the underpayment * * * was due to one cause--a substantial understatement of income tax," we found the relevant question to be "whether imposition of the section 6662(a) penalty for a substantial understatement had been supervisor-approved." Id. at 1217.

The rule we extract from these cases is that boilerplate text in an IRS communication, determining liability for an accuracy-related penalty "attributable

to one or more of" specified grounds, will be interpreted to assert all of the specified grounds as alternative bases for the penalty, unless other portions of the communication explicitly limit the penalty determination to a subset of those grounds. Here, the Letter 5153 and the RAR determined that petitioner was liable for a 20% penalty "attributable to one or more of" four specified grounds, including "a transaction lacking economic substance." Nothing in either document disavowed any of the four grounds as a justification for the penalty. We accordingly conclude that the IRS asserted in the RAR, but did not secure timely supervisory approval for, a penalty under section 6662(a) and (b)(6).

Respondent urges that the RAR is ambiguous and that the ambiguity is dispelled by extrinsic evidence--namely, by the Civil Penalty Approval Form that the RA completed on the same day. On page 2 of that form the RA checked "yes" for the substantial understatement penalty and "no" for "section 6662(b) other accuracy related [penalty]," which would include a penalty determined under section 6662(b)(6). And in the text explaining the "Reasons for Assertion of Penalty(s)," the RA noted that the "tax per examination" was ten times higher than the tax reported, so that "[a] substantial understatement penalty should apply."

We decline respondent's invitation to look behind the communication to the taxpayer. Congress enacted section 6751(b)(1) to prevent the unapproved threat

of a penalty from being used "as a bargaining chip." See Chai v. Commissioner, 851 F.3d at 219 (quoting S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601). It follows that our analysis should center on the IRS communication to the taxpayer, because that is the vehicle that would convey the supposed negotiating ploy. Here, petitioner would logically have read the RAR to assert four alternative bases for sustaining the 20% penalty, and he presumably would have evaluated settlement options on the basis of that assumption.

Our precedents likewise direct focus on the IRS communication to the taxpayer, not on subjective intentions of IRS personnel regarding imposition of penalties. In Belair Woods, LLC, 154 T.C. at 14, we noted the difficulty of ascertaining "the precise point in time at which an IRS officer should be deemed to have made, in a subjective sense, the 'initial determination'" to assert a penalty. We accordingly looked to the document by which the Examination Division formally notified the taxpayer, in writing, that penalties would be imposed. Id. at 15. Here that document was the Letter 5153, and the RAR that accompanied it is logically read to assert, as one of four alternative grounds for the 20% penalty, that

petitioner engaged in a "transaction lacking economic substance" under section 6662(b)(6).[3]

### 2. Section 6662(i) Rate Increase

Concluding as we do that timely supervisory approval for a penalty under section 6662(a) and (b)(6) was not obtained, we turn to the second question: Is section 6751(b)(1) nevertheless satisfied if approval is later secured to assert an increased penalty under section 6662(i) because the "noneconomic substance transaction" was not disclosed on the return? This appears to be a question of first impression in this Court.[4]

As noted previously, section 6662(i) does not impose a distinct penalty; it simply increases the rate imposed for the penalty determined under section 6662(a) and (b)(6). The RA recognized as much in his memo to Attorney Keim, noting that "[s]ection 6662(i) increases the accuracy-related penalty from 20% to 40%" when a noneconomic substance transaction is not disclosed on the return.

---

[3]In reaching this conclusion we place some weight on sec. 6751(a), which emphasizes the importance of accurate communication of penalties to taxpayers. It requires the IRS to "include with each notice of penalty * * * information with respect to the name of the penalty" and how it is computed.

[4]Petitioner raises concerns about the memorandum signed by Group Manager Pringle, allegedly on May 1, 2015, approving the RA's recommendation to assert the sec. 6662(b)(6) penalty at a 40% rate. Because we hold that timely approval was not secured for any penalty, we need not address petitioner's concerns.

The notice of deficiency itself refers to the penalty being determined as a "40% section 6662(b)(6) penalty."

In this setting, failure to disclose the transaction on the return is not a separate penalizable offense. Rather, it is analogous to an "aggravating factor" in criminal law that justifies a harsher penalty for the basic offense. Under 18 U.S.C. sec. 111 (2018), for example, a defendant who assaults or forcibly interferes with a Federal officer engaged in official duties faces a possible prison term of 8 years. But if the defendant uses a deadly weapon while committing that offense, the maximum term of imprisonment is extended to 20 years. See id. subsec. (b). In this scenario, using a deadly weapon is not a separate Federal crime. It is an aggravating factor that authorizes an enhanced penalty for the underlying crime.

Both the text of the statute and its legislative history show that Congress viewed section 6662(a) and (b)(6), amplified where appropriate by subsection (i), as imposing a single penalty. The 20% penalty and the 40% enhancement were both included in a section of the bill captioned "Penalty for Underpayments Attributable to Transactions Lacking Economic Substance." See Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, sec. 1409(b), 124 Stat. at 1068-1069. The House Report consistently refers to the 20% penalty and

the 40% enhancement as a single penalty. See H.R. Rept. No. 111-443 (I), at 298-305 (2010), 2010 U.S.C.C.A.N. 123, 231-238.

Related Code provisions point to the same conclusion. Section 6664(c)(2) provides that the "reasonable cause" defense, generally applicable to penalties, "shall not apply to any portion of an underpayment which is attributable to one or more transactions described in section 6662(b)(6)." Section 6664(c)(2) does not mention section 6662(i). But it seems clear that Congress intended the reasonable cause defense to be unavailable for the 40% version as well as the 20% version of this penalty. The House Report stated that there were no exceptions to "the penalty" and that "the penalty is a strict-liability penalty." H.R. Rept. No. 111-443 (I), supra, at 304.

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment" receives supervisory approval. Here, "the penalty" whose initial determination required approval was the penalty imposed under section 6662(a) and (b)(6) for engaging in a "transaction lacking economic substance." We have found that the RA failed to secure timely supervisory approval for this penalty, so it may not be assessed. The only element left for supervisory approval was the enhancement of the penalty rate from 20% to 40% on account of nondisclosure. But because the penalty under section 6662(a)

and (b)(6) was not timely approved, there is no applicable penalty for which the rate may be increased under section 6662(i).[5]

This result is consistent, not only with the text and legislative history of section 6662, but also with the policy underlying section 6751(b)(1). Congress added the latter provision to the Code to prevent unfairness in the assertion of penalties. If we permitted the IRS to impose a 40% penalty in the circumstances here, the IRS could penalize a taxpayer more severely despite its own mistake. If the IRS recognized the failure to comply with section 6751(b)(1) for a 20% penalty, it could later assert (and get approval for) the same penalty at a 40% rate under section 6662(i). The taxpayer would then confront the dilemma of having to make concessions or risk that the penalty would be doubled. This was precisely the sort of problem that Congress aimed to prevent by enacting section 6751(b)(1).

---

[5]We have previously concluded that supervisory approval must be secured both for the basic penalty under sec. 6662(a) and (b) and for any rate enhancement, e.g., under sec. 6662(h) or (i). See Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. 75, 83-84 (2019). We adhere to that conclusion here.

In consideration of the foregoing,

An order will be issued granting petitioner's motion for partial summary judgment and denying respondent's cross-motion.